# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-01030-SCT

*HENRY EARL HARVEY a/k/a HENRY E. HARVEY*
*a/k/a HENRY HARVEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/25/2016 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| TRIAL COURT ATTORNEYS: | JOEL SMITH |
| | DANA ROBIN CHRISTENSEN |
| | ROBERT GEOFFREY GERMANY, JR. |
| | WILLIAM CROSBY PARKER |
| | MITCHELL LANCE OWEN |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/19/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., COLEMAN AND CHAMBERLIN, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. After a jury trial, Henry Earl Harvey was convicted of first-degree murder in violation

of Mississippi Code Section 97-3-19(1)(a).[1] He was sentenced to a term of life in prison.

Harvey's counsel filed a brief pursuant to this Court's holding in *Lindsey v. State*, 939 So.

---

[1] The indictment subsequently was amended to reflect Harvey's habitual status.

2d 743 (Miss. 2005). Harvey was given additional time to file a pro se brief; however, he did not do so. Finding no error, we affirm the judgment and sentence of the Circuit Court of the First Judicial District of Harrison County.

## STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

¶2.     On the night of January 26, 2015, Jasmine Brown, Eddie Briggs, and Shondra Gardner were living at the Emerald Pines Apartments. After running errands, Jasmine and Shondra returned to their apartment. Some time that evening, Harvey arrived at the apartment and all three began drinking, smoking spice,[2] and using cocaine. Dexter Washington arrived at some point after Harvey, but Jasmine did not recall him smoking spice. Shondra mentioned to everyone that Eddie "jump[ed] on" Jasmine and that Jasmine deserved better. Harvey responded that if he "offed"[3] Eddie, he did not want anyone to say anything about it. Jasmine told Harvey that Eddie was the father of her children and she did not want anything to happen to him.

¶3.     Jasmine testified that she did not recall seeing Harvey or Dexter when Eddie arrived at the apartment. Jasmine testified that she recalled Shondra and Eddie talking privately in his room for approximately thirty minutes to an hour. Eddie then asked Jasmine to come in the room, and he "closed the door behind him and I turn[ed] around towards him, and he

---

[2] Spice is a mix of herbs (shredded plant material) and manmade chemicals with mind-altering effects. It is often called "synthetic marijuana" or "fake weed" because some of the chemicals in it are similar to ones in marijuana; but its effects are sometimes very different from marijuana, and frequently much stronger. *See* https://teens.drugabuse.gov/drug-facts/spice (last visited July 19, 2018).

[3] "Offed" is a slang word meaning to kill.

2

punched me in the head." Jasmine asked why he hit her, and Eddie told her that Shondra had just told him Jasmine was trying to sleep with Harvey and Dexter. Shondra and Harvey both attempted to check on Jasmine and Eddie, but Eddie told them to "stay out [of] our business."

¶4.    A fight broke out between Eddie and Harvey, although Eddie continued to tell Harvey that he did not want to fight him. Jasmine testified that as she was leaving the apartment, she saw a gun on a table. She grabbed the gun and hid it outside the apartment. She ran to another apartment to get help, but no one answered. Jasmine then heard the alarm on Eddie's mother's truck sound. Then she heard two gunshots. As Jasmine walked back to her apartment, she saw Eddie lying on the ground. She testified that he had been shot through his eye. Jasmine identified Harvey from a photo lineup as the man fighting with Eddie before he was shot.

¶5.    Dexter[4] testified that, on the night Eddie was killed, he went to the Emerald Pines Apartment complex to hang out with Jasmine, Shondra, and Harvey. Dexter was smoking spice while the other three were drinking and doing cocaine. Dexter testified that Jasmine mentioned that Eddie continuously had abused her:

> Jasmine, she was saying that whenever Eddie get there, he going to want to beat her up because that's all he do is beat her up. So they went to talking about it, you know, they – something need to be done about it. And she said she was tired of him beating her up. And saying that [Harvey] her cousin, he needed to help her out. So he [Harvey] was saying, you know, he going to do something about that. He'll put an end to that.

---

[4] Dexter acknowledged that, at the time of trial, he was incarcerated after being convicted of armed robbery and sale of a controlled substance.

¶6.      Later that night, Dexter and Harvey left the apartment so that Harvey could buy more cocaine. They returned to the apartment and continued to drink and use drugs. Dexter testified that when Eddie arrived, Eddie and Jasmine went to their bedroom and then Shondra and Harvey went to Shondra's bedroom. Dexter had a gun that he laid on a table while he made himself a sandwich. Jasmine came out of her room, and Dexter saw "a hand come around and slap her and put her in a headlock and drag her to the room." Jasmine started screaming and Dexter saw Harvey kick the door in. Dexter heard Harvey tell Eddie to "get off my cousin." Harvey and Eddie started fighting. Dexter testified that he heard Eddie tell Harvey that he did not want to fight Harvey and that Harvey needed to "chill out." Dexter tried to break up the fight, but the two men continued to wrestle. At the same time, Jasmine and Shondra started fighting. Dexter finally broke up the fight the second time and told Eddie to go home. Eddie picked up his keys and left.

¶7.      After breaking up the women's fight, Dexter heard a gunshot. He and Shondra were in the apartment at that moment, and he did not see his gun on the table. He looked out the window and saw Eddie lying on the ground. He then saw Harvey walking toward Eddie. Dexter testified that he saw "[Harvey] step over Eddie, bend over, and I heard another gunshot." Scared that Harvey might shoot him, Dexter ran back upstairs as Harvey came back to the apartment. Dexter saw that Harvey had a gun with him. Dexter testified that:

> I ask him, I say did you do this? Did you shoot him? Did you kill him? What did you do? He just told me to shhh, like that. . . . Just stood there. I ain't do nothing. He left, he went back down out the apartment. He said he would be back. So he went back out the apartment, I just follow him to kind of creep behind him or whatever. So I get to the door, I peak again see where he at, that's when I see him dragging, pulling the leg. Dragging the body.

4

Dexter then ran home. He later identified Harvey in a photo lineup.

¶8.     Gulfport police officer Randall Voellmann testified that when he arrived on the scene, he observed Jasmine holding the victim. Voellmann testified that Jasmine stated:

> Henry Harvey and Dexter Washington were hanging out with her and Shondra Gardner when Eddie Briggs came home. Shondra Gardner told Eddie Ms. Brown had been having sexual intercourse with the other two males. This started a physical fight between Eddie and Ms. Brown. Upon seeing this fight, she said [Harvey] started fighting with Mr. Briggs, Eddie Briggs, which spilled outside. And she stated twice that he was running for his life and they shot at him.

¶9.     Gulport police officer Wesley Majure testified that, when he arrived on the scene, he observed a black male wearing a black hoodie, white t-shirt, and black pants, walking through the apartment's courtyard. When Majure called to the man, the man ran into a field next to the complex. During this time, Majure's body camera and microphone were activated, as was the video of a nearby patrol car. Majure requested that a K-9 unit be dispatched to the scene. Once the K-9 unit arrived, Majure accompanied the officer and dog through the field. The dog was released and then apprehended the subject. Majure testified that the subject was the same individual he previously had seen at the complex, wearing the same clothes. The individual identified himself as Henry Harvey. Majure returned to the woods and located a firearm approximately ten feet from where he had found Harvey.

¶10.    Lori Beall, a forensic scientist with the Mississippi Forensics Laboratory and expert in the field of firearm and projectile analysis, testified that the .40 caliber projectiles and shell casings found at the scene and the projectile recovered from the victim were fired from the .40 caliber Smith & Wesson semiautomatic pistol also found at the crime scene.

¶11.   Detective Alvin Kingston testified that the Emerald Pines Apartment Complex had a surveillance camera. Kingston reviewed the video, which depicted Harvey dragging Eddie's body. Kingston took a DNA swab from Harvey, and the parties stipulated to the fact that DNA found on the pistol grip belonged to Harvey.

¶12.   Mark LeVaughn, M.D., the chief medical examiner for the State of Mississippi, testified that Eddie had a close-range (within one to two feet) gunshot wound to his left eye and a gunshot wound to the back of his left shoulder. LeVaughn testified that the gunshot wound to Eddie's shoulder would have been fatal, as it perforated both lungs and his aorta. Eddie's cause of death was multiple gunshot wounds.

¶13.   The State rested, and Harvey moved for a directed verdict, which was overruled by the trial court.

¶14.   Shondra testified on Harvey's behalf. She said that, during the day, prior to the shooting, she had seen Harvey with a gun. She acknowledged that Eddie and Jasmine fought constantly.  Shondra testified that when Harvey and Eddie began fighting, Harvey pulled out a gun, but Dexter took it from him and ran downstairs. She testified that Eddie ran out of the apartment, with Harvey and Dexter following him. Shondra heard gunshots after Harvey ran out. She testified that Dexter was the last person she saw with the gun. She acknowledged that she did not see who shot Eddie.

¶15.   On cross-examination, Shondra acknowledged that she had been drinking and using cocaine the entire day of the shooting. After her testimony, the defense rested.

¶16.    Alvin Kingston was called as a rebuttal witness. He testified that he had questioned

Shondra on two occasions. Kingston testified that Shondra never had told him that she had

seen Dexter with a gun inside her apartment or that Dexter had grabbed the gun from Harvey

and had run outside.

¶17.    The jury found Harvey guilty of first-degree murder. Harvey was sentenced to a term

of life in prison. Harvey filed a Motion for New Trial and for Acquittal Notwithstanding the

Verdict, which was denied.

## ANALYSIS

¶18.    In *Lindsey*, this Court outlined a procedure that appellate counsel must follow when

they determine that there are no appealable issues in the record. *Lindsey*, 939 So. 2d at 748.

This Court stated as follows:

> (1) Counsel must file and serve a brief in compliance with Mississippi Rule of
> Appellate Procedure 28(a)(1)-(4),(7); *see also **Smith v. Robbins***, 528 U.S. 259,
> 280-81, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000) (stating that "[c]ounsel's
> summary of the case's procedural and factual history, with citations of the
> record, both ensures that a trained legal eye has searched the record for
> arguable issues and assists the reviewing court in its own evaluation of the
> case.").

> (2) As a part of the brief filed in compliance with Rule 28, counsel must certify
> that there are no arguable issues supporting the client's appeal, and he or she
> has reached this conclusion after scouring the record thoroughly, specifically
> examining: (a) the reason for the arrest and the circumstances surrounding
> arrest; (b) any possible violations of the client's right to counsel; (c) the entire
> trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial
> misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into
> evidence or not; and (h) possible misapplication of the law in sentencing. *See*
> ***Robbins***, 528 U.S. at 280-81, 120 S. Ct. 746; ***Turner v. State***, 818 So. 2d
> 1186, 1189 (Miss. 2001).

(3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a *pro se* brief. ***Turner***, 818 So. 2d at 1189; *cf.* ***People v. Wende***, 25 Cal. 3d 436, 158 Cal. Rptr. 839, 600 P.2d 1071, 1074 (Cal. 1979).

(4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal. ***Robbins***, 528 U.S. at 280, 120 S. Ct. 746 (citing ***Wende***, 158 Cal. Rptr. 839, 600 P.2d at 1074).

(5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.

***Lindsey***, 939 So. 2d at 748.

¶19. We find that Harvey's attorney complied with all the requirements of ***Lindsey***. Counsel filed a brief stating he "diligently searched the procedural and factual history of this criminal action and scoured the record," finding no arguable issues for appeal. Counsel specifically asserted he considered and reviewed: (a) the reason for the arrest and the circumstances surrounding the arrest; (b) any possible violation of Harvey's right to counsel; (c) the entire trial transcript; (d) the rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions including the right to an instruction on Harvey's theory of the case; (g) all exhibits, whether admitted into evidence or not; (h) possible misapplication of the law in sentencing; (i) the indictment and all pleadings in the record; (j) any possible ineffective-assistance-of-counsel issues; (k) any speedy-trial issues; (l) any Fourteenth-Amendment due-process issues; (m) evidence of other bad acts; (n) hearsay testimony, including expert testimony using another's report and autopsy notes; (o) use of

depositions at trial; and (p) any other possible reviewable issues. Counsel also stated, and this Court confirmed, that he had mailed a copy of his brief to Harvey, notifying him that he had found no arguable issues and that Harvey had a right to file a pro se brief. Harvey did not file a pro se brief.

¶20. After a complete review of the record, we find sufficient evidence supports the jury's verdict and Harvey's conviction. The State was required to prove that Harvey killed Eddie "without the authority of law . . . with deliberate design. . . ." Miss. Code Ann. § 97-3-19 (Rev. 2014). The record contains more than sufficient proof to establish that Harvey shot and killed Eddie Briggs within the meaning of the statute.

## CONCLUSION

¶21. We find that Harvey's counsel complied with this Court's holding in *Lindsey* in submitting his brief, and the State proved the requisite elements of first-degree murder as defined in Mississippi Code Section 97-3-19(1)(a). Therefore, we affirm the judgment and sentence of the First Judicial District of the Harrison County Circuit Court.

¶22. **AFFIRMED.**

**WALLER, C.J., KITCHENS, P.J., KING, COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**